Good morning. My name is David Hamilton. I represent the appellant in this case, Larry Depee. This case involves a police shooting in which a nominal verdict was given by the jury, a nominal award. The trial court then awarded attorneys' fees. Before I address the merits of that issue, I'd like to address any concerns the court may have about a jurisdictional objection that was raised by the plaintiff in this case. The plaintiff has raised the objection that essentially this appeal is premature. We disagree, for the reasons we explained in our brief. We think that the order issued by the court that we are appealing from is the order granting attorneys' fees. That is a final appealable order because it establishes entitlement and the exact amount of the fees. You're not going to give me any pause about that. The question is whether or not the court is going to agree to the fact that the attorneys' fees are awarded as part of costs. Your Honor, there is language in the rules, Federal Rules of Appeal procedure and in the Federal Rules of Civil Procedure and in Section 1988 that talk about attorneys' fees awarded as costs. Nevertheless, the rules themselves, the Federal rules, seem to distinguish between a motion for costs and a motion for attorney's fees. And the basis for arguing that all statute, you know, not all statutory awards of attorney's fees are awarded as costs. Just in this one, 1988 says that fees are awarded as part of costs. That's all. I kind of think that you have jurisdiction, but I don't want to waste your time on that. All right. Well, the basis, if I understand the plaintiff's argument, the basis for saying that our appeal is premature is the order issued by the trial court based upon a motion for costs, which is not pending. The court said that the plaintiff could renew her motion for costs at some later date, but that's not currently pending. So I don't see how that makes the appeal premature. One last point on the jurisdictional argument. It seems to me it would be perfectly clear if the trial judge who issued one document on both issues, costs and attorney's fees, had issued two documents saying one for attorney's fees, one for costs, there wouldn't be any question that this appeal from the attorney's fees order would clearly be timely. Now, to shift to the subject of the merits, the purpose of Section 1983 action in this case was solely to recover money damages. And both the Supreme Court and the cases of the circuit have said that's the primary factor to look at in determining whether fees can be awarded premised on an award of nominal damages. You know, this is a nuance, but I think it may be worth pursuing. You said the purpose of this suit was to recover damages. In a sense, of course, that's true. That's what was sought.  I may bring, and this is not your suit, I may bring a suit for defamation and I'm asking for a dollar. Well, I don't care about the dollar. What I care about is the judgment that says I was defamed. So you can't say merely because the relief sought was damages that the only purpose of the suit was getting the money. That would be true, Your Honor, if, in fact, they had actually ever attempted at any time during this litigation to get any other kind of relief. No, you're not taking my point. Getting the judgment itself may produce some satisfaction, may produce some declaration of wrongful behavior, may produce some sense of deterrent not only as to these individual officers, but as to the department as a whole. So I'm saying you don't need to ask for something as a form of relief to have that be part of the purpose. Your Honor, I think that may be true. However, I don't think that the facts in this case really support that. That's a different matter. I mean, it's evident in the record that I exported in my reply brief that the sole purpose of this case throughout the litigation was, of the plaintiff's case, was to recover significant money damages. Here you go again. Well, the only thing that was sought during the entire course of the case was money damages. That was the only kind of relief. The plaintiff never said at any time in this lawsuit that all I wanted to do was vindicate my reputation or the loss of my son's life and I'll be happy to accept $1. I mean, throughout the course of this litigation, they made it clear that they wanted significant money damages. Of course. All right. But the case law that is abundant on this issue, both in the Supreme Court and in the Ninth Circuit, establishes that achieving a nominal verdict is not sufficient in and of itself to award attorney's fees. And this case law doesn't foreclose it either. No, but it does say, the Supreme Court has said, and this Court has said multiple times, that you have to show something more beyond the nominal verdict, which is. Well, the district court, what's wrong with what the district court said? Well, it's, it's, the district court said that the, it's sufficient to say that you have a wrongful death case. A death case, by its very nature, is different from a non-death case. That would mean then, it seems to me, that in every death case, if you get nominal damages, then you automatically get attorney's fees without anything more. I think that would be inconsistent with the language of Farrar v. Hobby, as well as Benton and other Ninth Circuit cases. You have to show something else that was, that was achieved. Well, you know, in a, in a, in a death case where a, where an officer has, where a jury has determined that an officer was, was responsible for someone's death, that's a pretty significant determination, isn't it? Well, you know, this Court, I think, disagreed in the Trovino v. Gates case, because there they said, well, here you have a police shooting case, and it's not particularly complex. Therefore, the, the issues presented there were not complex, and therefore, the trial judge should have, or actually properly reduced the fees. Was this officer the only officer involved in the shooting? Excuse me? Was this officer, the defendant, Mr. what's-his-name? DP. Yeah. Was he the only one? He's the only one. And he's the only defendant, yes. And the claim was that he used excessive force? Yes. And they prevailed completely on that? No. There were, the cases that actually went to the jury, there were three counts. Okay. One was a 14th Amendment claim on behalf of the mother herself. We won on that. The jury ruled in our favor. Then there was a Fourth Amendment claim, survival claim for the decedent. Plaintiffs prevailed on liability on that. And then there was a state wrongful death claim as well, and the plaintiffs prevailed on that. And the jury awarded $1 on the wrongful death claim and on the Fourth Amendment. But the whole focus of this, though, was on the officer's conduct. Yes. And the jury found that he was completely, that he was, in other words, there were no other officers involved? Correct. Correct? Yeah. He was responsible. Right. Right? Why isn't that, I mean, that's pretty significant. Well, both the Supreme Court majority, including Justice O'Connor's concurrence in Farrar, indicated that you needed something more. I mean, in every case where you have a nominal verdict, you're going to have a constitutional finding, a finding of unconstitutional conduct. And the Supreme Court and the Ninth Circuit have said that's not enough. You've got to show that you have significant legal issues or that you've got a public effect beyond that. And the cases that the Ninth Circuit has decided that suggest what would be appropriate are a change in policy that was affected, such as the Wilcox case decided by this Court. There was no such change in policy. And are you suggesting that the fact that there was a judgment that this officer had engaged an unconstitutionally deadly force has no effect on his employer? Well, the only evidence in the record on that is that the employer disagreed with the jury. The employer investigated and concluded that he complied with the Constitution. I understand that. But are you saying that this judgment coming out of a court of law after a full trial with a jury verdict holding that there has been an unconstitutional use of deadly force has no effect on the employer? On the employer or the employee? On the employer. I don't think there's any evidence in the record to suggest that, Your Honor. It's speculation. So in your view, you're willing to say that the employer is completely indifferent, that they don't care? I wouldn't say they're indifferent, Your Honor. They thoroughly investigated this shooting as they do in all shootings. And they concluded that the officer both complied with the law and complied with CHP policy. And then the jury and the court disagreed? The jury disagreed, yes. So how can we say that the district court abused his discretion when the jury found that there was an use of excessive force? And Farrar's just says there must be a question there on a significant legal issue. This is a constitutional excessive use of force. Why isn't this a significant legal issue? And since the court followed the jury verdict, why can't we say, how can we say there's use of discretion? Well, there's always a constitutional finding against the defendant in any nominal damages case. By a matter of definition, the Supreme Court said so in Farrar v. Sotti. This court has said so in Wilcox and Benton and Romberg. And all the courts have said you have to have something more because you can't have a finding with a nominal verdict without an unconstitutional finding. That's what we have here. But the case law is perfectly consistent that that's not enough to award attorney's fees. If it were enough, then the district court's rationale would survive, would be enough to award attorney's fees if you simply have a death case. There is no precedent at all in any circuit that we've been able to find that supports that view. And I think that that's contrary to Farrar. What was your argument at trial, which obviously succeeded, as to why in the event liability was found, damages should be nominal? I don't understand. I'm sorry. There obviously was an argument at trial that if liability were found, damages should be nominal. What was that argument? Okay. This case was bifurcated. And so we made that argument only in the damages phase. Right. So I'm saying what argument was made at trial as to why damages should be nominal? We didn't actually specifically argue that a nominal award should be made. Did you argue then that, I mean, a version of it that said no damages should be awarded? No. What did you argue? When the case got to the damages phase, the court's legal decision on the last day of trial about survival damages meant that on the Fourth Amendment claim, only a nominal award could be made on that. Oh, because? On the wrongful death claim, however, the sky was the limit. Yeah. And the plaintiff asked for $10 million, but the plaintiff specifically addressed the constitutional claim in her closing argument and asked for $10 million. We left it up to the jury to make an appropriate award, and they decided, based on the evidence, $1 on each count. And let me ask you this, because I misframed the question then. Why did the district judge, as to the 1983 claim, limit the plaintiff to either nominal damages and or punitives? What was the district court's rationale? The reason for that was that under California statutes, a survival claim cannot get pain and suffering damages. Based on the evidence, the only thing that was available was nominal plus punitive. The jury rejected that. That is to say there wasn't any pain and suffering? Well, the plaintiff said before trial they were going to present evidence of pain and suffering for the decedent. They never did. But then the court's ruling on the last day of trial concluded that the survival statute, the limitation on pain and suffering, applies in a Section 1983 case. All right. And that then foreclosed anything but a nominal verdict or a punitive damage. I see. That issue was never appealed to us. It may well be. Yeah. I mean, that's the problem with the procedural posture of this case. The plaintiffs are arguing that their motion for costs, which is not even pending at this time, extends the time to appeal both the cost motion and the underlying judgment under Rule 4. We argue that that doesn't have that effect. But if their argument on that wins, then sometime in the future, who knows when, when the court taxes costs, they could then make a final appeal of the underlying judgment as well. To conclude my argument, it seems to me that in order to show that you have shown a significant legal issue that you've prevailed upon, and the court, the district court didn't identify one, or that you have met or accomplished some public goal other than just seeking money damages, then you have to show that you're going to have some broader effect on the general public and on the law. And the court, the Ninth Circuit, has said you can do that in a number of ways. You can establish that you've prevailed in a class action, for example. Then it would be appropriate to award attorneys' fees even in a nominal judgment case. If you get punitive damages, then that's sufficient. If you succeed in getting, in having the officer disciplined by his agency because of your lawsuit, that would justify damages or an attorney fee award. None of those factors that have been identified by the Supreme Court or the Ninth Circuit are present in this case. And we simply have a nominal verdict and the court awarded attorneys' fees. I'd like to observe the rest of the time. Well, it's obvious that I was wrong. You had plenty to say, and you've got a few seconds left. We'll make sure you get a chance to respond. Thank you. May it please the Court, Mary Helen Beata Faccato for Appellee Sylvia Mahatch-Walkins, along with my co-counsel, Tori Pankoff. First, I want to address some of the points that were raised by the appellant and also some comments that came from Judge Fletcher as well as Judge Paez. First of all, with regards to why this case is different, the Court is absolutely correct that the decision in Farrar by our Supreme Court did not foreclose the possibility that attorney fees could be awarded in cases such as this. And the reason is is because the Court goes on in Justice O'Connor's concurrence to say that there are certain factors and other things that we can look at. And basically what our position was in this appeal is that death cases, by their very nature, are very, very different. And the reason is is because there is finality and permanence in the fact that government action results in the death of a human being and that our public policy that we can see throughout not only capital cases but also in our Constitution, and it's what our founding fathers believed in, is that life is sacred, that there is the sanctity of life, and that the Court and the law should uphold that. What's interesting about this case is there is sort of an anomaly, and that is that as the Court inquired as to why a jury in the first place would ever award nominal damages, and a question was asked of counsel as to what was the State's position. What did they do to try to convince a jury that nominal damages should be awarded? And what they did is exactly what they did in this appeal, where they devoted in this appeal pages and pages of outlining what the decedent's mental history was and the fact that he was a paranoid schizophrenic and that he had had these run-ins with the law, that he had been in and out of State mental institutions. All of this, again, laid out in the appellant's brief. And so the position that they took at trial was that John Watkins was more of a burden to his mother than a benefit and that somehow as tragic and as illogical and sensical that it is, that the fact that he was gone sort of gave his mother some sort of relief because she didn't have to bother with him anymore. And so first I would say that could this issue come up again? Counsel pointed out that there are no cases where courts interpret the Farrar decision in a death case and then say no attorney fees on top of that. And I think the problem with that is twofold. First, it's very rare that you're going to have a case like ours where liability is rendered in favor of the plaintiff, that in fact her son was shot and killed by the CHP officer, that he used unreasonable, unnecessary and excessive force in bringing about his death, and then have a jury come back and say that that loss, the loss of John Watkins' life to his mother means nothing. But let's just say that that issue does arise again. Then we're left with what we have in this case, where does the fact that you get a declaration from a jury where you vet this out in a court system and that a jury ultimately finds in favor of liability, in favor of the plaintiff, that the court is then going to come along and say that, you know what, just like we dealt with in Farrar, this is just a technical victory. They're going to say, Mrs. Sylvia Mahatch-Watkins, you wasted the court's time, you wasted your attorney's time, you wasted the state of California's time, you wasted resources of this court in bringing this case to trial. Absolutely not. And here's why. Just like in capital cases where the court is supposed to look in and scrutinize police conduct because we're about to take somebody's life and we want to make sure that because it's permanent that we're doing the right thing, so too must the court scrutinize and look at government conduct that results in death, even if it's after the fact. And the reason is, is because this is how we regulate police conduct. This is how we look at government action and how we're able to go to a court system, put all of this forward, and decide was this something that was justified and should this have been done. But does your whole argument just boil down to that this was a death case? No, it's not. And that's what makes the issue, the legal issue, significant? Well, I think the legal issue is significant because of that, but it's not just that. Judge Fletcher asked, one of his questions was, well, the fact that this person is dead, doesn't that make it different? And counsel said, well, fraud talks about any time that you have a constitutional case, it's going to involve constitutional issues and the fact that there's a declaration of unconstitutionality, you're always going to have that. The problem is, though, that some, not to trample on certain rights and not to say that some are, you know, more significant than others, but when you have a case like this and somebody's life is taken away, I guess in one sense it is of more significance in the sense that you don't have somebody's rights trampled upon for a few seconds. They're not, house isn't being subject to an illegal search or they're being punched in the face twice, as one of the Ninth Circuit cases is, and then somebody's suing for damages. You have somebody who's lost their life and now they're gone and nothing that the court can do can ever take that back. Getting to Judge Fletcher's point, he said, but sometimes cases are not just about money and it's not. Even in this case, even though the plaintiff asked for sums of money, even though it wasn't specific, the key was that just as the State of California did in the trial before the jury where it was basically, look at this guy, he's a basket case, he's a mental case, basically. They did that in the media, too. There was some evidence in the record as to that. They portrayed this shooting as having occurred because this guy basically deserved it. He brought about the events that took place that night. And so when we took this to trial and we tried this and Mr. Pankoff and myself and Mrs. Mahatch-Watkins agreed to go forward with this, we were basically fighting for John's reputation, too, and Mrs. Mahatch-Watkins' reputation that her son shouldn't have died that night, that he didn't have to, and it had nothing to do with the fact that he's a paranoid schizophrenic, but it had to do with the fact that the police shot and killed him and they shouldn't have. Now, this is not an argument made explicitly by the district court in her order that I'm about to put forward. She does say death cases are different, and then she says, and there's a particularly strong reason in such a case as this, maybe meaning to subcategorize certain kinds of death cases, but that's as far as she goes. She may not be saying all death cases are different. In all death cases where there's nominal damages, I will award attorney's fees. It may be that this particular type of death case. The argument that she might have had in mind would be, listen, if I don't award attorney's fees in this case, and one of the reasons why attorney's fees aren't coming forward in this case is the response of the jury to the argument made here that, you know, given this particular defendant, dollar damages really aren't warranted, that makes it cheap to kill poor, homeless, or schizophrenic people. And I don't want that to be the word on the street, that if you shoot with unconstitutionally deadly force a wealthy lawyer, that's going to cost you a lot. But if you shoot some homeless schizophrenic, it's going to cost you a dollar and no attorney's fees. That's the wrong message. Now, can I use that as a justification, even though the district judge doesn't say it that way? All she says is such cases. Absolutely, Your Honor, and here's why. That exact same argument was presented by myself in the motion we made to the district court. We put that before her. And, in fact, what we called Mr. Watkins was the perfect victim, that he was the ideal person with no gainful employment, no dependents. He basically, I mean, his life was worth, I guess, what society replaced on that value. Nothing, that he had no value. So the police can go and do something that's unconstitutional. A jury can come back with an award that says, basically, you did a good thing, because the mom no longer is burdened by her son. And then, on top of that, the court, I guess, contributes to the travesty by saying, oh, by the way, you wasted judicial resources. This was a technical victory. This was de minimis. And so you get no attorney fees. It's just, it makes absolutely no sense. And I think it would be a strong violation of public policy. The incentive, I think, is likely to be, if you get no attorney's fees in a case like this, that you guys are going to think long and hard before you take the next wrongful death case or excessive force 1983 case where you've got a plaintiff who is of this character, whether it's homeless, whether it's schizophrenic, and so on. Because no attorney's fees, I'm going to get nominal damages. Well, I guess I could take it as a pro bono, but I'm sure I'm going to, if this is the only kind of case I ever take, I'm going to starve to death. And, Your Honor, especially in a case like this where this was not an inexpensive case to trial. I mean, there were tons of experts. And we had a party on the other side who, so to speak, has unlimited resources. And so, absolutely, attorneys are going to think twice, and especially the kind of people that we're talking about, and I'm characterizing John in that category, is the kind of people that they're the people that need the voice. They're the people that don't have the means to go out and pay an attorney to do this. They need to have attorneys who will take these on contingency arrangements in order to have those rights vindicated. Your Honor, there's even one more important thing. The reason why this case all the more warrants such a decision, and maybe across the board the court doesn't have to apply it to all death cases, is the arrogance. And I say arrogance and indifference because the whole position that the State of California took in the opposition to the fee motion, and even that they take in this brief, is it resulted in no change of policy. And then they cite to the Wilcox case that they say, see, at least there, there was a change in policy. They had a declaration by somebody in the California Highway Patrol saying, this case basically, they basically said it means nothing. This judgment means nothing. We've changed nothing. We haven't disciplined Officer DePee, nor will we be disciplined, and nothing will ever change. Let's just say that. Let me just ask. Didn't the district court judge, I mean, regardless of the fact that the department took no action against DePee, didn't the district court judge say, this court finds in addition to obtaining nominal damages, plaintiff achieved other tangible results in that the jury's verdict will likely deter defendant DePee from engaging in future unconstitutional conduct. Regardless of whether the department did anything about it, this is going to cost the amount of the attorney's fees. So I think the district court judge was talking about the future conduct being a public benefit because hopefully if attorney's fees are granted, DePee will think twice before doing something like this in the future. Absolutely. And I think you raise an incredible point. The reason I was bringing it up is because the state of California, Officer DePee argues that, well, no, it's not going to deter it because there's been no change in policy. And if that was the test for determining whether, in fact, it has a deterrent effect, is whether, in fact, the CHP or whoever it happens to be takes a change in policy, makes a change in policy, nobody would ever do it. So, you know, of course they're going to say this doesn't affect us at all. But there's a sort of arrogance that goes along with that, is how can you say that somebody was shot and killed by an officer of yours, a jury finds that that was unconstitutional, basically that he should never have died, and then you're going to say that makes no difference whatsoever? This is exactly why we need an attorney fee award in this case. Thank you. Your Honor, I want to spend the last couple of minutes, unless the Court has further questions, addressing a couple other points. With regards to the – whether the appeal is premature, the reason why this becomes an issue is that appellants raise in their brief that, as you know, the Court took an 80 percent reduction in the attorney fees that were being requested. And the reason the Court gives is, well, we need to take into account because of Farrar the difference between the amount that was sought and the amount that was ultimately received. And because of that significance, we're going to reduce by 80 percent. One of the threshold issues in this case is whether Farrar is even applicable. And one of the arguments that was made in Appellee's brief was Farrar says that you don't even – and the Ninth Circuit's been consistent in their rulings and applicability and their analysis of Farrar, is you don't even get to a Farrar analysis unless the plaintiff requested compensatory damages, and instead of compensatories, they got nominal damages. Now, counsel – and I'd like to read briefly from an excerpt in the transcripts, but counsel says, well, they did ask for millions and millions of dollars, $10 million to be exact, on the Claim 1, which is the 1983 claim. And interestingly enough, counsel says in their opposition to the fee motion, Your Honor, you can't look at the $2 award on nominal damages, the dollar on Claim 1 and the dollar on Claim 3. You only get to look at Claim 1 because for attorney fees purposes, you only look at the constitutional claim that gives rise to the attorney fee order. Absolutely fair. Completely agree with it. But likewise, you can't look at what we requested in compensatory damages on Claim 3, the wrongful death claim, because that's not where we derive the attorney fee award from. You just look at Claim 1. With regards to Claim 1, and this is from the reporter's transcript, page 211. Let's turn to Claim 3, or for a second. Everything I've spoken about, the society, the loss of the society, the companionship, the care, and the comfort, that all relates to Claim 3. Again, the wrongful death claim. Those kinds of damages, they're not applicable under Claim 1. So when you talk and you assess about what the value of John Watkins, the loss to Mrs. Mahatch-Watkins was from John Watkins' death, that's all related to Claim 3 under her wrongful death claim. So while I may have misspoke in giving my closing argument, I make absolutely clear in the record to the jury that we were only seeking compensatory damages under Claim 3. And the reason was, this isn't the case of Romberg v. Nichols where strategically an attorney makes a decision at the last minute to throw everything out the window and only ask for nominal damages so that they can save a fee award. We were precluded. The district court took it out of my hands and said, you cannot ask the jury for anything but nominal damages and, of course, punitive damages on that claim. There's no cross-appeal here, right? No. Because, again, getting back to the appeal issue, we asked the Court on November 21st for an order treating this as a Rule 59 motion, which would have extended the time for appeal. The Court, under that rule, the time for appeal is extended until the district court finally makes a determination on that motion. And, Judge Pez, you raised an interesting point. Under Rule 54, it says, under attorney fees, that attorney fees are not just attorney fees but they're also non-taxable costs. So when we made our attorney fee motion, we were requesting both attorney fees and non-taxable costs of approximately $90,000. And so when the district court did not rule on the non-taxable costs, it, in effect, hasn't ruled on the attorney fee portion. And this is why we didn't need to take our appeal yet. But even more importantly is the fact that on March 5th, after the district court had issued this in-part decision, we did another request to the district court saying to continue to treat this as a Rule 59 motion and extend the time for appeal. And at that time, the district court granted a request. Now, counsel says, well, they didn't invite opposition. We did a letter brief with the court, and they could have equally, as they had done with other letter briefs, opposed that and said, no, I'm sorry, that's not what it does. But the district court has already done that before we took up this attorney fee issue while the attorney fee motion was pending. There was a judgment immediately after the verdict that was entered. And you've not appealed that. No, because what I thought was when all of this is done, we intend to appeal issues such as, as a matter of law, nominal damages in a case like this when you have the loss. You're of the view right now that you still have time to appeal the underlying  Your Honor, I think that even under the cases, yes, the short-term damage, the short answer is yes, that appellant is cited to, you need a determination of entitlement to fees, and you also need how much in fees. We often have situations where the court enters, you know, the district court enters a judgment on the merits, and then the attorney's fees progress separately. And eventually, there's an appeal from the judgment on the merits. Attorney's fees progresses along. There's an order on the attorney's fees. There's an appeal. They come up to us, and they get joined together. And I understand that, Your Honor. But in those cases, they don't file requests like the plaintiff did in this case to ask the district court, which under the statute we're allowed to do, is to ask the district court to treat our attorney fee motion as a Rule 59 motion, which is a motion to amend or alter the judgment, which would extend the time for appeal. We did that in this case so that we could take up this whole case together. That's what's so different. None of those cases that appellants cited to are like our facts. That's what makes us different. So, yes. The Rule 59 correspondence or motion, is all that in the record? That is, Your Honor. Is that in our excerpts of record? It absolutely is in the record. And this relates to the 80 percent reduction. Going back to my analysis about is Farrar even applicable. Remember, Farrar only applies when a plaintiff requests compensatory damages, and they get nominal damages instead. It's a failure to prove an essential element of their claim. That's a very nuanced reading of Farrar. You know, I disagree, Your Honor, and here's why. In Farrar, they asked for the son. I mean, they asked for the son, and they got very little. On the 1983 claim, which is the one we're dealing with, we only sought nominal damages. After the district court ruled that that's all you were going to get. Yeah. Yeah, but she took it out of our hands.  Okay. You're over time. Thank you. Thank you, Your Honor. I'm going to start out with a minute, and then you say what you need to say. Thank you. The Supreme Court and the Ninth Circuit have said that the most important factor, the primary factor in deciding whether, when you have a nominal verdict, whether you get attorney's fees is the extent of success compared to what you were asking for. And this Court has said specifically that means money. It is disingenuous, to say the least, for counsel to get up here and say all we wanted was to restore the reputation of John Watkins. I do not think they said that. It was clear they wanted money. Yes, very clear, until on the last day of trial, the courts ruled that they weren't going to get that on their only surviving constitutional claim. But then counsel read the text of her closing argument, but only a part of it. In another part of that, she repeatedly referred to claim one, the constitutional claim, and she asked for $10 million. And I think regardless of that, if the only thing you're trying to get in a lawsuit is huge money damages and you get $1 on the constitutional claim, you are not entitled to attorney's fees unless you can show that you accomplished something more. Judge Fletcher, the point you raised about a homeless man being killed and it's cheaper to shoot a homeless man, well, first of all, the record. Than to shoot you or me. Yeah, yeah, sure. There's nothing in the record. This man was a stranger to DP until he got into a fight in the dark with this man who tried to kill him. So he was a complete stranger. Farrar says that Section 1988 is not a relief act for lawyers. So the idea that you could somehow recognize deterrent effect by awarding attorney's fees, which, of course, the State of California is going to pay and not the defendant, that that's something you should consider would be completely contradictory to the language of Farrar and multiple cases we cited in our brief in the Ninth Circuit. Okay. Thank you. Thank you. Thank both sides for their argument. Watsons versus the peace submitted for decision.
judges: Nelson D. W., Fletcher W. , Paez